Dear Mr. Wall:
You requested an opinion of this office concerning the interpretation of La.R.S. 42:805(C) as it applies to delinquent insurance premiums due to the Office of Group Benefits by local school boards. The Office of Group Benefits (OGB) is responsible for collecting monthly premium payments from employer agencies that participate in the Group Benefits insurance program. Local school boards are among the participating employer agencies. If a local school board fails to timely remit contributions, La R.S.42:805(C) provides OGB with a mechanism to recover delinquent contributions.
La.R.S. 42:805(C) provides:
 If any employer agency fails to remit both the employer and employee contributions to the board within thirty days after receipt of the monthly invoice premium statement from the office, the state treasurer shall, at the request of the office, withhold from state funds due the agency the full amount of the delinquent employer and employee contributions and remit this amount directly to the office.
The term "office" means the Office of Group Benefits. La.R.S.42:801(B).
You note that there are several accounts in the State Treasury containing funds that may be considered to be state funds due to a local public school system within the meaning of La.R.S.42:805(C). However, such funds, though ultimately due and paid to specific local public school systems, are initially appropriated to other agencies in globo for allocation and distribution to specific systems in accordance with certain constitutional and statutory provisions applicable to them. These funds include: (1.) the Tobacco Settlement Proceeds funds, including the Millennium Trust Education Excellence Fund, Louisiana Fund, and the Millennium Leverage Fund;
(2.) Louisiana Education Quality Trust Fund; and (3.) the Minimum Foundation Program funds.
You seek answers to the following questions:
Are any of the above referenced funds subject to the provisions ofLa.R.S. 42:805(C) and thus may be requested by and paid to OGBpursuant thereto when a local school system is over thirty daysdelinquent in paying its monthly premiums?
Tobacco Settlement Proceeds Funds
As a result of the Master Settlement Agreement entered in the caseRichard P. Ieyoub, Attorney General, ex rel. State of Louisiana v.Philip Morris, Inc. et al., the Louisiana electorate approved several constitutional provisions establishing a special permanent trust, several special funds and a special permanent trust fund. These constitutional provisions, as well as enabling legislation contained at La.R.S. 39:98.1 et seq., provide for the deposit and credit of certain portions of the Tobacco Settlement proceeds received by the State to the trust and to the funds, and for appropriations from certain portions of the investment earnings of the trust and from the funds. City, parish and other local school systems are allocated portions of certain appropriations from the funds. There are three Tobacco Settlement Proceeds Funds from which city, parish and other local school systems may receive allocations.[1]
Millennium Trust Education Excellence Fund
La. Const. art. VII § 10.8 establishes the Millennium Trust (the "Trust"). La. Const. art. VII § 10.8 also establishes the creation of three special funds, the Health Excellence Fund, the Education Excellence Fund and the TOPS Fund, within the Millennium Trust, and provides for the allocation and credit of the Tobacco Settlement Revenues received by the Trust, and the earnings of the Trust, to these special funds. The monies in the Trust may only be withdrawn pursuant to an appropriation by the legislature for the purposes authorized. Among the special funds created within the Millennium Trust, appropriations are made to the state superintendent of education from the Education Excellence Fund (the "Fund") for distribution to eligible entities. La. Const. art. VII § 10.8(C)(3)(d) provides the amounts designated for city, parish, and other local school systems. La. Const. art. VII §10.8(C)(3)(f) further provides as follows:
 (3) Appropriations from the Education Excellence Fund shall be limited as follows:
* * *
 (f) Monies appropriated pursuant to this Subparagraph shall be restricted to expenditure for pre- kindergarten through twelfth grade instructional enhancement for students, including early childhood education programs focused on enhancing the preparation of at-risk children for school, remedial instruction, and assistance to children who fail to achieve the required scores on any tests passage of which are required pursuant to state law or rule for advancement to a succeeding grade or other educational programs approved by the legislature. Expenditures for maintenance or renovation of buildings, capital improvements, and increases in employee salaries are prohibited. The state superintendent of education shall be responsible for allocating all money due private schools.
 Education Excellence Fund amounts allocated to city, parish or other local school systems are distributed pursuant to a plan approved by both the legislature and the Department of Education. La. Const. art. VII § 10.8(C)(3)(g). Local school system plans are submitted to the legislature after being approved by the Department of Education and amounts are distributed to the school systems by the Department of Education in a lump sum after legislative approval of the plan.
Louisiana Fund
 La. Const. art. VII § 10.9 establishes the Louisiana Fund. La.Const. art. VII § 10.9(A) provides for the deposit of allremaining monies received as a result of the Settlement Agreementafter deposits into the Millennium Trust as provided in Section10.8, and all interest income on the investment of monies in theLouisiana Fund. Appropriations from the Louisiana Fund are alsorestricted to specific purposes provided in the Constitution andenabling legislation. La. Const. art. VII § 10.9(B) provides:
 B. Appropriations from the Louisiana Fund shall be restricted to the following purposes:
 Initiatives to ensure the optimal development of Louisianachildren through the enhancement of educational opportunities andthe provision of appropriate health care, which shall include butnot be limited to:
 * * *
 The constitutional provision proceeds to list the purposes for which appropriations from the Louisiana Fund may be used; however, this list is not exclusive. La.R.S. 39:98.4(B) provides additional purposes which include:
 B. Appropriations from the Fund shall be restricted to the following purposes provided in this Subsection . . .
 (1) Initiatives to ensure the optimal development of Louisiana's children through enhancement of educational opportunities and provision of appropriate health care through:
 (a) Prekindergarten educational programs by city and parish school boards to provide quality early care and education facilitating the healthy development and school readiness of at-risk four-year- old children.
 * * *
 (e) Assistance to schools and school districts which are found to be in need of corrective action under the State School and District Accountability System.
 Millennium Leverage Fund
 La. Const. art. VII § 10.10 establishes the Millennium LeverageFund. The Millennium Leverage Fund is a special permanent trustfund. La. Const. art. VII § 10.10(A) states that "[t]helegislature may provide, by passage of a specific legislativeinstrument by a favorable vote of two-thirds of the electedmembers of each house of the legislature, for the deposit of allor a portion of monies received by the state as a result of theMaster Settlement Agreement." Should the legislature take suchaction, appropriations from the Millennium Leverage Fund arelimited to the purposes set forth for the TOPS, Health Excellence,Education Excellence and Louisiana Funds.
 The constitutional provisions governing each of the TobaccoSettlement Proceeds Fund discussed above limit the purposes forwhich such funds can be appropriated. The use of such fundsallocated to city, parish and other local school systems forpurposes other than those set forth in La. Const. art. VII §10.8(C)(3)(f) and La.R.S. 39:98.4(B) is prohibited by theLouisiana Constitution. However, within the permittedconstitutional and statutory purposes are areas that may includeprogram expenditures for employee benefits. It is therefore theopinion of this office that the Tobacco Settlement Proceed Fundsare only subject to the provisions of La.R.S. 42:805(C) to theextent that the program expenditures include the payment of OGBinsurance premiums. The withholding and remittance of any TobaccoSettlement Proceed Funds allocated to a local school system thatare not designated for the payment of OGB insurance premiums wouldresult in the use of such funds for purposes other than those setforth in the Constitution, law and approved plans and thus inviolation of the Constitution.
Louisiana Education Quality Trust Fund
 La. Const. art. VII § 10.1, establishing the Louisiana EducationQuality Trust Fund, creates a "Permanent Trust Fund" for thedeposit of certain revenues received under Section 1337(g) ofTitle 43 of the United States Code which are attributable tomineral production activity or leasing activity on the OuterContinental Shelf and certain investments thereon. La. Const.art. VII § 10.1 also creates a "Support Fund" in which certainrecurring revenues and investment income are deposited and fromwhich appropriations for certain educational programs are made.Disbursements from the Support Fund (8(g) funds) are made to theBoard of Regents for higher education purposes and the Board ofElementary and Secondary Education (BESE) for elementary andsecondary education purposes. City, parish and other local schoolsystems are allocated certain funds from the disbursements made toBESE. La. Const. art. VII § 10.1 and La.R.S. 17:3801 listspecific educational purposes for which 8(g) funds may beallocated. La. Const. art. VII § 10.1(D)(2) provides as follows:
 (2) The treasurer shall disburse not more than fifty percent of the monies in the Support Fund as that money is appropriated by the legislature and allocated by the State Board of Elementary and Secondary Education for any or all of the following elementary and secondary educational purposes:
 (a) To provide compensation to city or parish school board professional instructional employees.
 (b) To insure an adequate supply of superior textbooks, library books, equipment, and other instructional materials.
 (c) To fund exemplary programs in elementary and secondary schools designed to improve elementary or secondary student academic achievement or vocational-technical skill.
 (d) To fund carefully defined research efforts, including pilot programs, designed to improve elementary and secondary student academic achievement.
 (e) To fund school remediation programs and preschool programs.
 (f) To fund the teaching of foreign languages in elementary and secondary schools.
 (g) To fund an adequate supply of teachers by providing scholarships or stipends to prospective teachers in academic or vocational-technical areas where there is a critical teacher shortage.
 Appropriations from the Support Fund are made pursuant to a program and budget submitted by BESE to the legislature. La. Const. art. VII § 10.1(C). BESE's program and budget currently includes block grants to local school systems. Local school systems submit proposals to BESE for the expenditure of the block grant funds allocated to their respective system. Amounts are distributed to school systems by BESE on a reimbursement basis after the expenditure of such funds pursuant to an approved proposal.
 In reviewing La. Const. art. VII § 10.1, we reach the sameconclusion as we did as to the Tobacco Settlement Proceeds Funds.The constitutional provision governing the Louisiana EducationQuality Trust Fund limit the purposes to which BESE may allocate8(g) funds. The use of 8(g) funds allocated to city, parish andother local school systems for purposes other than those set forthin La. Const. art. VII § 10.1, and as further delineated in BESE's8(g) program and budget, is prohibited by the LouisianaConstitution. However, within the permitted constitutional andstatutory purposes are areas that may include proposalexpenditures for employee benefits. It is therefore the opinionof this office that 8(g) funds are only subject to the provisionsof La.R.S. 42:805(C) to the extent that the program expendituresinclude the payment of OGB insurance premiums. The withholdingand remittance of any 8(g) funds allocated to a local schoolsystem that are not designated for the payment of OGB insurancepremiums would result in the use of such funds for purposes otherthan those set forth in the Constitution, law and approvedproposals and thus in violation of the Constitution.
Minimum Foundation Program
 La. Const. art. VIII § 13 creates the Minimum Foundation Program.La. Const. art. VIII § 13 provides:
 (B) Minimum Foundation Program. The State Board of Elementary and Secondary Education, or its successor, shall annually develop and adopt a formula which shall be used to determine the cost of a minimum foundation program of education in all public elementary and secondary schools as well as to equitably allocate the funds to parish and city school systems. Such formula shall provide for a contribution by every city and parish school system. Prior to approval of the formula by the legislature, the legislature may return the formula adopted by the board to the board and may recommend to the board an amended formula for consideration by the board and submission to the legislature for approval. The legislature shall annually appropriate funds sufficient to fully fund the current cost to the state of such a program as determined by applying the approved formula in order to insure a minimum foundation of education in all public elementary and secondary schools. Neither the governor nor the legislature may reduce such appropriation, except that the governor may reduce such appropriation using means provided in the act containing the appropriation provided that any such reduction is consented to in writing by two-thirds of the elected members of each house of the legislature. The funds appropriated shall be equitably allocated to parish and city school systems according to the formula as adopted by the State Board of Elementary and Secondary Education, or its successor, and approved by the legislature prior to making the appropriation. Whenever the legislature fails to approve the formula most recently adopted by the board, or its successor, the last formula adopted by the board, or its successor, and approved by the legislature shall be used for the determination of the cost of the minimum foundation program and for the allocation of funds appropriated.
 The Minimum Foundation Program (MFP) formula adopted by BESE and approved by the Legislature determines the cost of a minimum foundation program of education in all public elementary and secondary schools and allocates funds equitably to parish and city school systems. Traditionally, the legislature approves the MFP formula by concurrent resolution. The 2004-05 fiscal year MFP formula is found in Senate Concurrent Resolution Number 122 of the 2004 Regular Legislative Session. The MFP formula determines the amount that each city and parish school system will receive in MFP funding. Funds within the MFP are not designated for specific purposes. City and parish school districts are permitted to determine how to spend MFP funds, as long as certain required expenditure amounts are satisfied. As set forth in Senate Concurrent Resolution 122, required expenditure amounts affecting local school board budget allocations include:
 VII. REQUIRED EXPENDITURE AMOUNTS
 A. Required Pay Raise for Certificated Personnel
 Fifty percent of a district's increased funds provided in Levels 1 and 2 over the prior year after adjusting for increases in student membership shall be used only to supplement and enhance full-time certificated staff salaries and retirement benefits.
 * * *
 B. 70% Local General Fund Required Instructional Expenditure
 To provide for appropriate accountability of state funds while providing local school board flexibility in determining specific expenditures, local school boards must ensure that 70 % of the local school system general fund expenditures are in the areas of instruction. The definition of instruction shall provide for: (1) the activities dealing directly with the interaction between teachers and students to include such items as: salaries, employee benefits, purchased professional and technical services, instructional materials and supplies, and instructional equipment; (2) pupil support activities designed to assess and improve the well-being of students and to supplement the teaching process; and (3) instructional staff activities associated with assisting the instructional staff with the content and process of providing learning experiences for students.
 * * *
 To the extent that the MFP formula is adopted and approved pursuant to La. Const. art. VIII § 13 and is recognized as having the import of a constitutional provision, we believe that the expenditure requirements in the MFP formula are distinguishable from the restrictive purposes for appropriations from the Tobacco Settlement Proceeds Funds and the Louisiana Education Quality Trust Fund. MFP funds are intended to assist with meeting the fiscal requirements necessary to operate a school system. Required expenditure amounts identify the level of expenditures that must be directed toward certain budget areas, i.e. allocation of funds generally. Among the fiscal requirements of operating a school system and a matter included in each school system's budget is the payment of employee benefits. We do not believe that the payment of such benefits in the manner prescribed in La.R.S. 42:805(C) from any state MFP funds due to a school system restricts a school system's ability to comply with the required expenditures in Senate Concurrent Resolution Number 122. In fact, the payment of such employee benefits should only further compliance with the 70% instructional requirement. It is therefore the opinion of this office that Minimum Foundation Program funds are subject to the provisions of La.R.S. 42:805(C).
With respect to any funds subject to the purview of La.R.S.42:805(C) may OGB, on a monthly or other periodic basis, pursuantto the statute, request and be paid therefrom an amount less thanthe full delinquent amount?
 La.R.S. 42:805(C) provides that ". . . the state treasurer shall,at the request of the office, withhold from state funds due theagency the full amount of the delinquent employer and employeecontributions and remit this amount directly to the office."
 La.R.S. 1:3 provides that "[t]he word `shall' is mandatory andthe word `may' is permissive." La.R.S. 42:805(C) clearlymandates that the state treasurer execute the withholding andtransmission upon submittal of a request from OGB.
 To determine the obligations placed on OGB in submitting a requestto the state treasurer, La.R.S. 42:805(C) must be read within thecontext of La.R.S. 42:805 as a whole. La.R.S. 42:805, entitledCollection and Deposit of Contributions, provides as follows:
 A. The office shall be responsible for preparing and transmitting to each employer agency a monthly invoice premium statement delineating the participating employees of that agency, the class of coverage, total amount of employer and employee contributions due to the office, and such other items as are deemed necessary by the office.
 B. It shall be the responsibility of the employer agency to reconcile the monthly invoice premium statement, collect the employee contribution by payroll deduction or otherwise, and remit the reconciled monthly invoice premium statement and both the employer and employee contributions to the office within thirty days after receipt of the monthly premium invoice statement.
 C. If any employer agency fails to remit both the employer and employee contributions to the board within thirty days after receipt of the monthly invoice premium statement from the office, the state treasurer shall, at the request of the office, withhold from state funds due the agency the full amount of the delinquent employer and employee contributions and remit this amount directly to the office.
 D. All employer and employee contributions for the payment of premiums for group benefits for state employees contracted for under the provisions of this Chapter shall be deposited directly with the office. The office shall pay all monies for such benefits as they become due and payable.
 La.R.S. 42:802(A)(2) provides that OGB shall "exercise its powers, duties, functions, and responsibilities and shall administer and implement the programs authorized in this Section." The collection of premium payments is a function that OGB must perform in the administration and implementation of its programs. Inherent in the administration and implementation of its programs is an obligation to maintain the actuarial soundness of its programs, which is furthered by the collection of premium payments.
 La.R.S. 42:805 sets forth the method by which OGB must collectand deposit contributions from participating agencies. La.R.S.42:805 includes obligations imposed on both OGB and participatingemployer agencies and provides for a progression of events thatare to occur in the deposit and collection of contributions.First, OGB must prepare and transmit a monthly invoice premiumstatement to participating employer agencies.[2] Second,employer agencies are responsible for transmitting the employerand employee contributions to OGB within thirty days after receiptof the monthly premium invoice statement.[3] In the eventthat an employer agency does not fulfill its obligation, La.R.S.42:805(C) becomes applicable and the next step in the progressionof events is OGB's submittal of a request to the state treasurerto withhold and transmit state funds due the employer agency. Itis the opinion of this office that upon the non-payment of themonthly invoice premium statement as prescribed in La.R.S.42:805(B), OGB is required by La.R.S. 42:805(C) to submit arequest to state treasurer to withhold and transmit state fundsdue the employer agency.[4]
 The amount that OGB must submit to the state treasurer in itsrequest is controlled by the requirement in La.R.S. 42:805(C)that the state treasurer withhold "the full amount of thedelinquent employer and employee contributions. . . " We do notbelieve that La.R.S. 42:805(C) provides OGB with the discretionto submit an amount less than the amount of the delinquentcontributions. It is therefore the opinion of this office thatOGB cannot request an amount less than the full delinquent amount.
With respect to any funds subject to the purview of La.R.S.42:805(C), how should the State Treasurer determine the specificamounts attributable to a delinquent system from the in globoamounts held in the accounts, to be withdrawn and paid to OGBupon its request in regard to the delinquent system, and are anyother restraints upon or procedures to be followed by theTreasurer in the withdrawal and payment to OGB of any suchamounts?
 As indicated in our discussion above, the funds subject to theprovisions of La.R.S. 42:805(C) are Tobacco Settlement ProceedFunds and 8(g) funds designated for the payment of OGB insurancepremiums and MFP Funds. Education Excellence Funds and 8(g) fundsare distributed pursuant to an approved plan or proposal. Inreference to Education Excellence Funds, the Department ofEducation, as the flow through entity, would have to identify forthe state treasurer, based on the school system's approved planand budget, the amounts designated for the payment of OGBbenefits. BESE, as the entity that distributes 8(g) funds, wouldhave to identify for the state treasurer the amounts allocated tothe school system and, based on the school system's approved blockgrant proposal, the amounts designated for the payment of OGBbenefits.[5] Once the OGB benefit payment allocations areidentified by the respective entities, the state treasurer canproceed with the withholding and remittance of funds, as set forthin La.R.S. 42:805(C).
 The provisions governing the distribution of MFP Funds by thestate treasurer are set forth in La.R.S. 17:25(A)(1) whichprovides:
 The superintendent shall prepare and transmit to each parish and city school board, during the current calendar or fiscal year, monthly warrants on the state official designated by law for such purpose. The warrant shall cover the amount of the funds due each such school board based upon the total funds appropriated for all school boards in accordance with such formula as is adopted for the purpose by the board in accordance with law. Each warrant shall be made payable to the treasurer of the school board. These warrants shall be drawn by the superintendent subject to the control of and regulations established by the board.
 In addition, La.R.S. 17:25.1 provides:
 A. As used in this Section, the following words and phrases shall have the following meanings unless the context otherwise requires:
 (1) "Department" means the Department of Education acting through the superintendent or his designee.
 (2) "Schedule notice" means a notice sent by the department by registered or certified mail to each affected parish and city school board describing a disbursement schedule for the amounts payable annually to the board under the Minimum Foundation Program pursuant to this Section.
 (3) "Transmit" means depositing in the mail, allowing a designated person to pick up the check, or directly depositing the check in a bank in the city of Baton Rouge designated by the parish or city school board, whichever method each city or parish school board designates to the department.
 B.(1) The department shall transmit to each parish and city school board not later than the twenty- fifth day of each month, one-twelfth of the amount payable annually to the board under the Minimum Foundation Program, unless the department mails a schedule notice to each parish and city school board on or before May 1 of each year which contains such information as is required to inform such boards that a disbursement schedule of the amount payable annually to the board under the Minimum Foundation Program will be implemented pursuant to this Section.
 The practical application of this statute results in the Department of Education preparing a warrant each month, which indicates the amount due to each school district for that month based on the funds appropriated to all school districts in accordance with the MFP formula. Upon receipt of the warrant, the state treasurer makes such funds available, which are drawn by the Superintendent. The Department of Education, not later than the twenty-fifth day of each month, transmits to each school district one-twelfth of the amount payable to it annually under the MFP formula.
 La.R.S. 17:25 and 17:25.1 clearly prescribe that warrants are tobe transmitted and MFP funds are to be distributed in monthlyintervals for amounts equaling one-twelfth of the total annualamount due to each school district. Each year, the AppropriationsBill appropriates to the Department of Education the sum of theMFP Funds that will be transmitted to local school districtsthroughout the fiscal year.[6] La.R.S. 17:25 and 17:25.1 andthe Appropriations Bill must be read in conjunction. Each schooldistrict has an inchoate or incomplete interest in its annualportion of the appropriated MFP Funds in the state treasury.However, it is not until a warrant is transmitted pursuant to La.R.S.17:25 that a school district's monthly allocation of MFPFunds becomes due to the school district. We do not believe thatthe status of the Department of Education as the flow throughentity affects the determination that the amounts are due to thelocal school districts.[7]
 In response to your question as to MFP funds, it is the opinion ofthis office that in determining the specific amounts attributableto a delinquent system from the in globo amounts held in accounts,the state treasurer should determine the amount due to thedelinquent system based on the monthly warrant submitted by thesuperintendent indicating the allocation to each school district.We suggest that prior to making the funds available to be drawn bythe superintendent, the state treasurer provide the superintendentwith notice as to the amount withheld from the delinquent system'sallocation, so that he can make the appropriate modifications tothe transmittals.
OGB is also concerned that a delinquent school system may attemptto carry over amounts due to OGB to a subsequent fiscal year.However, appropriated funds held by the Treasurer for local schoolsystems are for a particular fiscal year. May funds held by theTreasurer be requested by and paid to OGB for amounts outstandingfrom a prior fiscal year?
The budget process for local school boards is found in La.R.S.17:88, La.R.S. 17:89 and the Local Government Budget Act, La.39:1301 et seq. La.R.S. 17:88
requires the various city and parish school boards throughout the State to adopt and submit to the state superintendent of education not later than September thirtieth of each year, a budget of expected revenues and expenditures for the fiscal year, July first through June thirtieth. The state superintendent of education reviews, examines and approves the budgets. La.R.S. 17:88(B) provides that "[t]he payment of debts arising out of the current operation of previous years shall be taken care of in accordance with law."
La.R.S. 17:89 further provides in pertinent part as follows:
 The parish school boards that have been operating upon a fiscal year basis, July first to June thirtieth, shall continue to operate upon that basis and the parish school boards that have been operating on a calendar year basis . . . shall so adjust their finances that they shall begin operating upon a fiscal year basis on and after July 1, 1935; provided that no parish school board shall, after July 12, 1934, permit its expenditures out of current revenues, in any such year, to exceed its receipts for the same year, and, provided further, that all debts incurred by parish school boards prior to July 12, 1934, properly to be paid out of current revenues, are hereby declared valid and the school boards are authorized and directed to budget and pay the same, in whole or in part, when, as, and if, current revenues are or become available for that purpose.
* * *
 Parish school boards are prohibited from making budgets, expenditures, or disbursements, for current, or other expenses in excess of the revenues shown in the budget for that year.
* * *
 The Local Government Budget Act also provides that "[t]he total of proposed expenditures shall not exceed the total of estimated funds available for the ensuing fiscal year." La.R.S. 39:1305(E). If a local school system attempts to carry over debts due to a subsequent fiscal year, it will be in violation of the above cited Title 17 provisions and the Local Government Budget Act, La. 39:1301 et seq. However, such a violation will not extinguish any debt a school system has not satisfied at the end of a fiscal year. Any restriction that may be imposed on a school system's ability to pay a debt of a subsequent fiscal year with current fiscal year funds as a result of the above discussed balanced budget requirements, in our opinion, does not apply to OGB's ability to collect delinquent contributions. The authority granted to OGB in La.R.S. 42:805(C) is not restricted to amounts due to a local school system within the same fiscal year that the debt arose. The practical application of such a reading could result in OGB being unable to collect delinquent contributions
for the months of May and June, if it submits its invoices at the end of each month.[8] We do not believe that the legislature intended such a restriction. It is therefore the opinion of this office that funds held by the Treasurer can be requested by and paid to OGB for amounts outstanding from a prior fiscal year
I hope this opinion has sufficiently answered your inquiry. If I can be of further assistance to you, please let me know.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
By: ________________________________
 Katherine M. Whitney Assistant Attorney General
CCF, Jr.:KMW
cc: Mr. John Kennedy, State Treasurer
Mr. Cecil Picard, State Superintendent of Education
[1] We will address all Tobacco Settlement Proceeds Funds from which the law permits city, parish and other local school systems to receive allocations, although they may not currently receive allocations from certain funds.
[2] La.R.S. 42:805(A)
[3] La.R.S. 42:805(B)
[4] We believe that the requirement in La.R.S. 42:805(C) that "state funds due the agency" includes monies currently accessible or attainable (i.e. at the exact moment the request is received) and monies that become accessible or attainable in the future (i.e. as such monies are received or become distributable by the Treasury). We suggest that before the state treasurer distributes any funds to OGB, particularly funds that become available for distribution on a date subsequent to his receipt of the initial request, he require OGB to confirm that the amounts submitted in its request remain delinquent. Or, in a case where the initial available funds are not sufficient to cover the entire amount submitted as delinquent, OGB should confirm the amount due for subsequent withholdings.
[5] This office recognizes that the budget documents submitted as part of an approved plan or proposal may not currently identify employee benefit data in a format detailed enough to allow the Department of Education or BESE to report OGB premium data to the state treasurer.
[6] For fiscal year 2004-05, see Act 1 of the 2004 Regular Legislative Session, page 252.
[7] Also note that La.R.S. 17:25(A)(2) authorizes the superintendent to not submit a warrant on behalf of local school systems that fail to timely provide to the Department of Education the completed minimum foundation program equalization report until the completed report is provided. The failure to submit a warrant on behalf of a local school system would result in no amounts being due to the local school system.
[8] MFP payments are disbursed on the twenty-fifth of each month. If OGB's May invoice is sent on May 31st, the June MFP payment, which is the final MFP payment of the fiscal year, will be transmitted prior to thirty days having elapsed. Thus, delinquent contributions for May would not be eligible for withholding until the July MFP payment of the subsequent fiscal year. Likewise, delinquent contributions for June, if invoiced on June 30, would not be eligible for withholding by the state treasurer at the request of OGB until the August MFP payment.